# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BY REFERRAL ONLY, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Defendant. | Case No.: 18cv1695-MMA (JLB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 18] |

Plaintiff By Referral Only, Inc. ("Plaintiff" or "Referral") filed this action against Defendant Travelers Property Casualty Company of America ("Defendant") alleging causes of action for breach of the duty of good faith and fair dealing and breach of insurance contract. Doc. No. 1 ("Compl."). Defendant filed a motion for summary judgment. Doc. No. 18-1 ("MSJ"). Plaintiff filed its response in opposition [Doc. No. 19 ("Oppo.")], to which Defendant replied [Doc. No. 21 ("Reply")]. The Court found the matter suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 22. For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment.

# Material Facts[1]

On January 24, 2018, Keith McBean filed an action against United of Omaha Life Insurance Company ("United") and By Referral Only, Inc. Employee Welfare Benefit Plan (the "Plan"), asserting causes of action for recovery of benefits and breach of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq* (the "McBean lawsuit"). Doc. No. 18-4, Exhibit 4. On April 17, 2018, McBean filed a First Amended Complaint ("McBean FAC") in that action substituting Referral for the Plan. Doc. No. 18-4, Exhibit 5 ("McBean FAC").[2] McBean alleges that Teresa McGee was an employee of Referral and was a participant in the Plan, which included disability and life insurance benefits. McBean FAC ¶¶ 4-7. The Plan was underwritten by United. *Id.* ¶ 6. McGee was diagnosed with cancer and subsequently took a leave of absence in June 2015. *Id.* ¶ 8. She returned to work on a part-time basis in October 2015. *Id.* McGee stopped working on August 10, 2016 and collected long term disability benefits through the Plan and United until her death on August 5, 2017. *Id.* McBean submitted a life insurance claim to United. *Id.* ¶ 12. United denied the claim, asserting that McGee's coverage had terminated under the terms of the Plan prior to her death. *Id.* McGee continued to make premium payments to United while working part-time, but was never notified that her coverage ceased. *Id.* ¶¶ 9, 12, 15. McBean's first cause of action for recovery of benefits asserts that United's denial of benefits was improper under the Plan. *Id.* ¶¶ 12, 16. The second cause of action seeks equitable relief for United and Referral's breach of fiduciary

---

[1] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[2] The Court **GRANTS** Defendant's request to judicially notice the McBean Complaint and First Amended Complaint. *See Reyn's Pasta Bella, LLC*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of public court records); *United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986) (noting that courts may take judicial notice of its own records).

duties. *Id.* ¶¶ 23-27. Both causes of action allege that Referral is liable for its breach of fiduciary duties. *Id.* ¶¶ 16, 26.

Defendant issued an "Office Pac" policy to Plaintiff for the policy period of April 6, 2017 to April 6, 2018, which provided first party property coverage, and commercial general liability coverage which included Employee Benefits Liability coverage pursuant to form CG T1 01 01 16 (the "Policy"). Doc. No. 18-3, Exhibit 1 ("Policy"). The Policy provides:

> **SECTION 1 – EMPLOYEE BENEFITS LIABILITY COVERAGE**
> **1. Insuring Agreement**
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for loss to which this insurance does not apply. We may, at our discretion, investigate any negligent act, error, or omission and settle any claim or "suit" that may result[.]
> 
> . . .
> 
>     **b.** This insurance applies to loss only if:
>         **(1)** The loss is caused by a negligent act, error or omission committed by the insured, or by any other person for whose acts the insured is legally liable, in the "administration" of your "employee benefit program[."]
> 
> . . .
> 
> **2. Exclusions**
> This insurance does not apply to:
> 
> . . .
> 
>     **c. Failure To Perform A Contract**
> Loss arising out of failure of performance of contract by any insurer.
> 
> . . .
> 
>     **g. ERISA**
> Loss for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as amended, or by any similar federal, state or local laws.

Policy at 27. "Administration" is defined as "[p]roviding information to 'employees', including their dependents and beneficiaries, with respect to eligibility for or scope of the 'employee benefit program[,'] [h]andling records in connection with the 'employee benefit program[,'] or [e]ffecting, continuing or terminating any 'employee's' participation in any benefit included in the 'employee benefit program.'" *Id.* at 32-33.

Plaintiff filed this lawsuit against Defendant on July 25, 2018, seeking relief for breach of insurance contract and breach of the duty of good faith and fair dealing for Defendant's failure to defend Plaintiff in the McBean lawsuit. Compl.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

//

## DISCUSSION

Defendant argues it is entitled to summary judgment because there is no coverage under its policy, which negates Plaintiff's bad faith claim. MSJ at 19, 28. Specifically, Defendant contends it owed no duty to defend or indemnify Plaintiff because: (1) the policy covers negligent acts committed in the "administration" of an employee benefits program, not an insured's fiduciary acts; (2) the policy's ERISA exclusion precludes coverage; (3) the policy's failure to perform an insurance contract precludes coverage; and (4) the policy precludes coverage for claims for equitable surcharge or unjust enrichment. *Id.* at 19-28. Plaintiff opposes summary judgment, asserting that: (1) the conduct alleged in the McBean lawsuit arose out of its "administration" of an employee benefits program; (2) the ERISA exclusion is ambiguous; (3) the policy's failure to perform an insurance contract does not preclude coverage because Plaintiff could still be liable absent United's failure to perform the contract in the McBean lawsuit; and (4) the policy covers relief entered against the insured for civil liability, including equitable-monetary liability.[3] Oppo. at 8-20.

### A. Duty to Defend

"In California, a liability insurer's duty to defend its insured is broad. It arises whenever a claim may potentially lead to indemnity." *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)). To determine whether the duty to defend is triggered, the Court first compares the allegations of the complaint, and "[f]acts extrinsic to the complaint[,]" with the policy terms to see if they "reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co.*, 4 Cal. 4th at 1081. "The existence of the duty to defend turns on all facts known by the insurer at the inception of

---

[3] The Court declines to analyze the parties' third and fourth arguments listed due to the Court's conclusion that the clear and unambiguous ERISA exclusion precludes coverage. Additionally, the Court declines to deem admitted all of Defendant's requests for admissions, as the admissions were not necessary to resolve the instant motion. *See* MSJ at 18.

the third-party lawsuit." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 509 (Ct. App. 2001) (citing *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993)). "Any doubt as to whether these facts trigger a duty to defend is resolved in favor of the insured." *Pension Trust Fund for Operating Eng'rs*, 307 F.3d at 949 (citing *Horace Mann Ins. Co.*, 4 Cal. 4th at 1081)). Also, "any limitations of the defense duty must be communicated to the insured in a way that is 'conspicuous, plain and clear.'" *Id.* (quoting *Md. Cas. Co. v. Nationwide Ins. Co.*, 65 Cal. App. 4th 21, 30-31 (Ct. App. 1998)).

The insurer has a higher burden than the insured in establishing whether a duty to defend arises under a policy. *Id.* "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp.*, 6 Cal. 4th at 300. Once the insured makes a showing of potential coverage, the insurer must defend the insured unless the facts alleged in the underlying lawsuit "can by no conceivable theory raise a single issue [that] could bring it within the policy coverage." *Id.* (quotation marks and citation omitted).

### 1. *Acts Committed in the Administration of an Employee Benefit Program*

For Plaintiff's conduct to be within the scope of coverage, the acts must have been "committed . . . in the 'administration' of your 'employee benefit program.'" Policy at 26. Defendant asserts that only ministerial activities fall within the term "administration." MSJ at 19. According to Defendant, Plaintiff's act of advising McGee that she continued to be eligible for coverage under the employee benefit plan is not ministerial, but "substantive failures to discharge fiduciary obligations." *Id.* at 20 (citing *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Travelers Prop. Cas. Co.*, No. 05 Civ. 4648 (NRB), 2006 WL 1489243, at *7 (S.D.N.Y. May 26, 2006)). Plaintiff contends its conduct is within the Policy's definition of "administration," but also argues its conduct qualifies as "ministerial." Oppo. at 7-10.

"In interpreting an insurance policy, the Court first looks to the language of the policy itself." *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 905

(N.D. Cal. 2016). "Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law." *Jauregui v. Mid-Century Ins. Co.*, 1 Cal. App. 4th 1544, 1548 (Ct. App. 1991) (quotation marks and citation omitted). The "clear and explicit meaning" of the provisions "interpreted in their ordinary and popular sense controls judicial interpretation unless [the disputed terms are] used by the parties in a technical sense, or unless a special meaning is given to them by usage." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995) (quotation marks and citation omitted). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).

As discussed above, the Policy only provides coverage for an insured's "negligent act, error or omission . . . in the 'administration' of [the insured's] 'employee benefit program[.]'" Policy at 26. The definition of "administration" in the Policy includes "[p]roviding information to 'employees[,]' including their dependents and beneficiaries, with respect to eligibility for or scope of the 'employee benefit program[.]'" *Id.* at 32. Thus, Defendant's argument that "administration" encompasses only ministerial acts is an unreasonable construction of the policy provision. *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 142 (2d Cir. 2014) (finding the defendant's reliance on *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, unavailing and that "[n]otwithstanding the *National Union* opinion and the cases it cites to, no construction can modify the definition of the term in the contract wording"); *see also Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) (noting that clear and explicit contractual language governs). Whether ministerial or not, providing information regarding eligibility is expressly within the scope of coverage. *See* Policy at 32. Here, Plaintiff allegedly "fail[ed] to advise [McGee] that her eligibility for coverage had expired" and "affirmatively advised" McGee "that she continued to be covered." McBean FAC ¶¶ 15-16. This fits squarely within the definition of administration as defined by the Policy.

Accordingly, the Court concludes that Plaintiff's alleged conduct in the McBean lawsuit falls within the Policy's definition of "administration."

### 2. The ERISA Exclusion

The Court next considers whether the ERISA exclusion precludes coverage. *See* MSJ at 21-27. "Provisions which purport to exclude coverage or substantially limit liability must be set forth in plain, clear and conspicuous language." *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 921 (1973) (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 273 (1966)). To be plain, clear, and conspicuous, coverage exclusions and limitations must meet two separate tests: (1) the exclusion must be conspicuous, meaning it "must be placed and printed so that it will attract the reader's attention[;]" and (2) the exclusion "must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004).

The rule that exclusionary language must be conspicuous, plain, and clear only applies when the insured has a reasonable expectation of coverage. *Id.* at 1213. Once the Court determines the insured has a reasonable expectation of coverage, the Court considers whether the limitation on that coverage is conspicuous. *Travelers Property Cas. Co. of Am. v. Superior Ct.*, 215 Cal. App. 4th 561, 575 (Ct. App. 2013). Then, the Court considers whether the provision is plain and clear to give the exclusion effect, which "means more than the traditional requirement that contract terms be 'unambiguous.' Precision is not enough. Understandability is also required." *Haynes*, 32 Cal. 4th at 1211 (quotation marks and citations omitted).

Plaintiff does not argue the ERISA exclusion is inconspicuous; rather, Plaintiff challenges the exclusion as unclear and ambiguous.[4] Oppo. at 12. The Policy's ERISA

---

[4] The Court need not reach Plaintiff's objectively reasonable expectation of coverage under the Policy because the Court finds that the ERISA exclusion is plain and clear. *See Marentes*, 224 F. Supp. 3d at 909 (citation omitted). The ERISA exclusion is also conspicuous. *See Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 384-85 (1976) (holding an exclusion clause conspicuous as a matter of law when

exclusion provides that "[t]his insurance does not apply to . . . [l]oss for which any insured is liable because of liability imposed on a fiduciary by [ERISA]." Policy at 27. Defendant contends this exclusion precludes coverage because Plaintiff is alleged to have acted as an ERISA fiduciary and to have breached its fiduciary duties. MSJ at 22.

Plaintiff contends the ERISA exclusion is not plain and clear because "[d]etermining what constitutes a fiduciary duty under ERISA is not within the 'working vocabulary' of the average insured." Oppo. at 12. This argument is unavailing. In *Pension Trust Fund for Operating Eng'rs*, the Ninth Circuit considered a provision requiring the insurer to defend its insured from "any claims first made against the Insured during the Policy Period as a result of any actual or alleged Breach of Fiduciary Duty committed by an Insured." *Pension Trust Fund for Operating Eng'rs*, 307 F.3d at 950. The policy defined "breach of fiduciary duty" as "the violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by [ERISA] or by the common or statutory law of the United States of America or of any state or other jurisdiction therein." *Id.* The Ninth Circuit found "[t]he plain language of this provision creates no ambiguity." *Id.* While the ERISA exclusion at issue in this policy does not specifically define "fiduciary," the exclusion itself is sufficiently analogous to the policy in *Pension Trust Fund for Operating Eng'rs* for the Court to conclude that the ERISA exclusion is plain and clear. *Compare id.* (finding a policy requiring an insurer to defend its insured from "any actual or alleged Breach of Fiduciary Duty committed by an Insured" where "breach of fiduciary duty" is defined as "the violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by [ERISA]" to be unambiguous), *with* Policy at 27 (stating that this insurance does not apply to "[l]oss for which any insured is liable because of liability imposed on a fiduciary by [ERISA]").

---

it was found in a section under the bold face heading "Exclusions," in printing the size and intensity identical to the rest of the policy); *see also* Policy at 27.

Plaintiff also asserts that fiduciary "is so broad as to make coverage for administration of pension plans illusory" because "anyone engaged in the administration or management of a pension plan is a fiduciary under ERISA." Oppo. at 15. However, the Policy language is clear, the ERISA exclusion precludes coverage for "[l]oss for which any insured is liable *because of liability imposed on a fiduciary* by [ERISA]." Policy at 27 (emphasis added). The plain and clear meaning of this exclusion is that it excludes only those ERISA claims that allege a breach of fiduciary duty under ERISA. *See Ins. Co. of Pa. v. OCÉ-USA Holdings, Inc.*, No. 12 C 04713, 2013 WL 1283819 at *5-6 (N.D. Ill. Mar. 26, 2013) (finding the plain and ordinary meaning of an ERISA exclusion that excluded coverage for "[d]amages for which any insured is liable because of liability imposed on a fiduciary by [ERISA]" to exclude only ERISA claims alleging a breach of fiduciary duty under ERISA).[5]

Plaintiff next contends the remedies sought in the McBean lawsuit "are not all based on the failure of [Referral] to perform alleged fiduciary functions," meaning "the duty to defend exists." Oppo. at 13. The duty to defend arises if there is any potential for liability under the policy. *Horace Mann Ins. Co.*, 4 Cal. 4th at 1084. As such, Plaintiff argues that there exists a duty to defend because its alleged conduct in the McBean lawsuit is not solely based on breach of fiduciary duties. *See* Oppo. at 13.

With respect to the first cause of action for recovery of benefits, the McBean FAC alleges that Referral was required to notify employees "when they cease to be eligible for insurance under the policies and provide the employee with information about the above options available to continue or obtain new life insurance." McBean FAC ¶ 12. Referral "did not advise [McGee] that she ceased to be eligible for continued coverage under the

---

[5] While this case applies Illinois law, it is substantially similar to California law in this context. *See id.* at *3 ("In determining whether a duty to defend exists, the underlying complaint and insurance policy must be construed liberally, resolving all doubts in the insured's favor. 'Where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary, and popular sense.' But 'if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.'")

life insurance plans and in fact believed that [McGee] continued to be covered under both policies with the continued payment of premiums." *Id.* In fact, Referral allegedly "affirmatively advised [McGee] that she continued to be covered under both life policies." McBean FAC ¶ 15. In summation, McBean contends that Referral "violated [its] fiduciary duties by failing to advise her that her eligibility for coverage had expired, while at the same time accepting her premiums and in effect advising her that she continued to be covered . . . while [Referral] affirmatively advised her and her family that she continued to be covered[.]" McBean FAC ¶ 16.

As to the second cause of action for equitable relief, Referral "had a duty to promote the interest of employees and their beneficiaries," which obligated Referral to "explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents[,] to provide them with adequate notice of circumstances which may result in disqualification, ineligibility, or denial or loss of benefits and what was needed to continue their elected life insurance coverage." McBean FAC ¶ 24. "At no time did [Referral] advise [McGee] that in order to be eligible for continued coverage she had to do more than continue to pay the policy premiums." McBean FAC ¶ 25. As a fiduciary, Referral allegedly "breached its obligations," resulting "in the loss of life insurance benefits." McBean FAC ¶ 26. According to McBean, Referral intentionally or negligently misrepresented to McGee that she was eligible for coverage, when in fact, she was not. McBean FAC ¶ 28.

Based on a reading of the McBean FAC, all of Plaintiff's alleged conduct arose out of its alleged breach of fiduciary duties imposed upon it by ERISA. *See generally*, McBean FAC. In other words, the McBean FAC seeks to hold Plaintiff liable for loss it incurred "because of liability imposed on a fiduciary by [ERISA]." *See* Policy at 27. The Policy clearly and unambiguously precludes coverage for such losses. Accordingly, no duty to defend exists. *See Montrose Chem. Corp.*, 6 Cal. 4th at 295 (holding that the duty to defend ends when it is apparent there is "no potential for coverage").

//

11

18cv1695-MMA (JLB)

## B. Duty of Good Faith and Fair Dealing

The California Supreme Court has held that "if there is no *potential* for coverage, and hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36. Accordingly, because Defendant did not breach the contract by failing to defend Plaintiff in the McBean lawsuit, Plaintiff's claim for breach of the implied duty of good faith and fair dealing necessarily fails. *See id.*; *see also Marentes*, 224 F. Supp. 3d at 918 (finding the plaintiffs' claim for breach of the duty of good faith and fair dealing barred by *Waller* and granting summary judgment in favor of the defendant).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment. This order disposes of all claims. Accordingly, the Court **ORDERS** the Clerk of Court to enter judgment in favor of Defendant Travelers Property Casualty Company of America and to terminate the case.

**IT IS SO ORDERED**.

Dated: April 10, 2019

Hon. Michael M. Anello
United States District Judge